IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-10-2415-PHX-ROS (MHB) |
| Respondent/Plaintiff, | CR-07-01217-PHX-ROS |
| vs. | **REPORT AND RECOMMENDATION** |
| Gregory Thomas Young, Jr., | |
| Movant/Defendant. | |

TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

This matter comes before this Court upon consideration of a Motion to Vacate Sentence Pursuant to 28 U.S.C. §2255 (hereinafter, "§2255 motion"), filed on November 8, 2010, by Movant Gregory Thomas Young, Jr. (CVDoc. 1.)[1] Respondent, the United States of America, filed a Response on March 11, 2011 (CVDoc. 6), and on September 14, 2011, Movant filed a Reply (CVDoc. 10).

**BACKGROUND**

On November 7, 2007, in the related criminal matter, CR-07-01217, Movant was charged by indictment with one count of Assault with a Dangerous Weapon, in violation of 18 U.S.C. §1153 and §113(a)(3) (Count 1), and one count of Assault Resulting in Serious

---

[1] All documents filed in CV-10-02415 will be designated as "CVDoc" and all documents filed in the related criminal action, CR-07-01217, will be designated as "CRDoc."

Bodily Injury, in violation of 18 U.S.C. §1153 and §113(a)(6) (Count 2). (CRDoc. 1.) Movant's first trial ended in a hung jury, and a mistrial was declared by the court. (CRDoc. 36.) Movant's second trial commenced on May 6, 2008. (CRDoc. 71.) Evidence was introduced at trial that on the date of the offense, February 17, 2007, Movant, his fiancee Effie Rhoades, his sister Donna Baca, Donna's husband Ruben Baca (the victim), and Movant's uncle all lived together in the double wide trailer of Movant's mother, Hazel Lewis, in Sacaton, Arizona, on the Gila River Indian Reservation. (CRDoc. 91, at 65, 100, 141.) In the late afternoon, Movant and Effie were having a barbeque cookout at Hazel's house to celebrate their birthdays. (Id., at 65-66, 100-01, 111, 141.) Donna and Ruben's two friends, Tiana Peters and Tracy Thompson, also were present at the cookout. (Id., at 134, 146.)

During the evening, Movant and Ruben got into an argument. (CRDoc. 91, at 67.) Movant fired a gun twice in the air and then hit Ruben on the back of the head with it, leaving no injuries. (Id., at 67-68.) Upon hearing what sounded like "popping noises," Donna, Tiana, Tracy and Hazel went outside and observed Movant and Ruben arguing. (Id., at 101, 134, 147.) Donna and Hazel separated them. (Id., at 102.) Donna started yelling at Movant, and Hazel told everyone to leave. (Id., at 72, 102.)

As Ruben and Donna were leaving, and getting into their truck, Movant came toward them, and stabbed Ruben in his left side with a knife. (CRDoc 91, at 70-71, 103-04.) Ruben saw the black handle of the knife, but did not see the blade. (Id., at 71.) Movant then took off running. (Id., at 71, 104.) After Ruben was stabbed, he yelled, "He stabbed me. He stabbed me." (Id., at 104.) Donna then ran to Hazel's trailer yelling that Movant had stabbed Ruben. (Id., at 71, 137.) Donna then drove Ruben to the hospital, where he was "air-evac'd" to Good Samaritan Hospital for treatment. (Id., at 72-73, 97, 105-106.) The trauma surgeon who examined Ruben saw what appeared to be a stab wound that penetrated Ruben's abdominal cavity on his left side just below the rib line. (Id., at 121-22.) Through the laparotomy that was performed, the surgeon discovered that the stab wound went through and through the large intestine, or colon. (Id., at 123-24.) The surgeon closed the wound and

Ruben spent 11 days in the hospital before he was discharged. (Id., at 66-67, 99, 106.)

Both Ruben and Donna admitted to having used illegal drugs that day, and Ruben also admitted to drinking 6-8 beers and a shot of Crown Royal that evening. (CR91, at 66-67, 175.) Movant did not testify, but a detective who interviewed him following his arrest testified that Petitioner admitted to having punched Ruben in the face which resulted in Ruben falling to the ground. (Id., at 159.) At the close of the Government's case, Movant's counsel made an oral motion for judgment of acquittal. (Id., at 182.) He renewed that motion following the close of evidence, and the motion was denied. (CRDoc. 93, at 193.) Following a two-day jury trial, Movant was convicted of Count 2, and the jury was unable to reach a verdict on Count 1. (CRDoc. 72.) After trial, Movant filed a motion for mistrial, judgment of acquittal, and/or a new trial, claiming that the verdicts were fundamentally inconsistent and logically irreconcilable, that there was insufficient evidence to convict Movant, and that a juror committed misconduct. (CRDoc. 89.) The court denied Movant's motion. (CRDoc. 105.) On November 18, 2008, Movant was sentenced to 120 months' imprisonment, followed by a 3-year term of supervised release. (CRDoc. 137.)

On appeal, Movant, through counsel, raised two issues: (1) whether the district court abused its discretion in denying his motion for a mistrial on the basis of inconsistent verdicts rendering the evidence insufficient to sustain a conviction on Count 2, prosecutorial misconduct, and the court's answer to a jury question; and (2) whether the district court abused its discretion in denying his motion for a mistrial for juror misconduct. (CVDoc. 6, Exh. 1.) The Ninth Circuit denied relief, finding that the verdicts were not logically inconsistent, that the prosecutor's statement to the jury did not constitute reversible error, that the court's answer to a jury question was not plain error, that the district court did not abuse its discretion in its response to a second juror note, and that there was sufficient evidence before the jury to sustain the guilty verdict on Count 2. (CRDoc. 151-1, Memorandum Decision.) The mandate was issued on December 10, 2009. (CRDoc. 151.)

Movant filed his §2255 motion on November 8, 2010. (CVDoc. 1.) In his motion, Movant lists four grounds for relief:

> Ground One: ineffective assistance of counsel in violation of the Sixth Amendment, based upon his attorney's failure to file pre-trial motions for severance, and other motions to suppress statements;
> Ground Two: ineffective assistance of counsel in violation of the Sixth Amendment based upon his attorney failure to call defense witnesses, in particular his mother and Alphonso G. Pablo;
> Ground Three: ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments based upon his attorney's failure to raise on appeal the denial of his motion for mistrial on the basis of insufficiency of the evidence to support his conviction and his attorney's failure to appeal based upon a claim of insufficiency of the evidence;
> Ground Four: ineffective assistance of counsel in violation of the First, Fifth, Sixth, and Fourteenth Amendments, based upon his attorney's failure to raise as error during trial or on appeal the prosecutor's improper argument to the jury.

(Id.)

Movant requests an evidentiary hearing to present evidence in support of his claims. (CVDoc. 1, at 9.)

In their Answer, Respondent contends that each of Movant's ineffective assistance of counsel claims fail on their merits. As such, Respondent requests that the Court deny and dismiss Movant's §2255 motion with prejudice.

**LAW**

Movant claims that he was denied his Sixth Amendment right to effective assistance of counsel at trial and on appeal. The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting

Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

**CLAIMS**

Ground One:

Movant claims that his attorney was ineffective because he did not file a motion to sever the two counts against him. He claims that he was prejudiced by the joinder because the jury was presented evidence during trial of the facts supporting a conviction on Count 1, even though the jury was ultimately unable to reach a verdict on that Count, and a mistrial was declared.

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses in the same indictment, if they are (1) of the same or similar character, (2) based on the same act or

- 5 -

transaction, or (3) based on acts or transactions that are connected with, or constitute parts of a common scheme or plan.   Fed.R.Crim.P.8(a).  Joinder of offenses promotes judicial economy.  Zafiro v. United States, 506 U.S. 534, 537 (1993); United States v. Lopez, 477 F.3d 1110, 1117 (9th Cir. 2007).   Based upon the fact that the two counts charged against Movant arose out of the same act or transaction, joinder was proper.

Severance is governed by Fed.R.Crim.P. 14, which requires a showing of prejudice. Schaffer v. United States, 362 U.S. 511, 514 (1960).  Severance is not prejudicial if the evidence relating to all counts would have been admissible in each case even if the counts had been severed.  United States v. Mitchell, 502 F.3d 931, 963 (9th Cir. 2007).  In the instant case, the victim's wounds were described as stab wounds, and thus the evidence relating to the use of a knife by Movant was inextricably intertwined with the evidence of the victim's injury.  See also, United States v. Anderson, 642 F.2d 281, 284 (9th Cir. 1981)("When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate."). Furthermore, it is clear from the jury's verdicts - convicting Movant on Count 2, but not reaching a verdict on Count 1 - that the jury analyzed the counts separately. Movant has suffered no prejudice by the joinder of Counts 1 and 2 at trial.

Movant does not set forth the specifics of his claim that his attorney failed to file other pretrial motions. He vaguely asserts that "the facts and statements told to the defense attorney during the pre-trial stages and trial and appeal are not (ALL ON RECORD)," so he is entitled to an evidentiary hearing.  Movant fails, however, to allege or otherwise identify those statements.  Movant has not established that his counsel was ineffective in failing to file a motion to sever or in failing to file other, unidentified pretrial motions, or that he suffered any prejudice as a result.

Ground Two:

Movant claims that his attorney should have called witnesses Hazel Lewis (his mother), and Alphonso G. Pablo, and that he "knows that these witnesses would've provided a favorable account of what happened during the time the victim [], claimed he was assaulted." He furthermore claims that "Mrs. Hazel Lewis would've been able to state where

1  the [Movant] was at the time the victim had stated he was 'just stabbed by the [Movant],'" and
2  that both Lewis and Pablo "would've been able to discredit the alleged victim/witness as
3  being untruthful and very intoxicated on multiple drugs and alcohol." (CVDoc. 1, at 6.)
4  Movant does not provide an affidavit or any statement from witness Pablo supporting his bare
5  assertion. In his Reply, however, Movant submits an affidavit of Hazel Lewis. (Doc. 10,
6  Exh. 1.)

7  Ms. Lewis avows therein that she was home on the evening of February 17, 2007
8  "watching television when she heard two loud pops, [she] ran out to find [her] daughter
9  Donna Young-Baca and her friend Tracie Thompson in the living room. Donna and [Hazel]
10 both ran out the back door, [and] Tracie immediately left [] thru the front door." (CVDoc. 10,
11 Exh. 1.) Hazel observed her son-in-law, Ruben Baca (the victim), in a "verbal disagreement"
12 with her son Greg (Movant). She then "went to find out what this was about & [her daughter]
13 Donna immediately sided with her spouse Ruben to hurl names and obscenities degrading
14 [her] son Greg. He was angry and told [Hazel] they were leaving for [her] newphew's home
15 in Casa Grande where they would continue a birthday party for his girlfriend Effie Rhoades.
16 [Hazel] saw no gun so [did] not know where pops came from." (Id.)

17 Hazel then "carried Effie's gifts inside to their room. . . . [and] last seen [her] son Greg
18 standing wit Effie about 15 feet on the west side of [her] home. Ruben & Donna were alone
19 near their pickup truck about 30 feet on the east side of [her] home, on the far side of their
20 truck parked beyond two mesquite trees. After taking the gifts inside, which took no more
21 than 40 seconds, [Hazel] again went outside. Donna came running to [her] yelling Greg had
22 stabbed Ruben where they had been standing & Ruben was lying on the ground. She was
23 yelling at Greg, name calling him again, he was still standing on the west side where [she] last
24 saw him with Effie." (CVDoc. 10, Exh. 1.) Ms. Lewis's affidavit does not contain any
25 statements about the victim/witnesses being untruthful or intoxicated.

26 Hazel Lewis's version of events is consistent with other witnesses' accounts, and is
27 inconsistent with the statement given by Movant to police upon his arrest. Effie Rhoades,
28 Movant's fiancee at the time of the incident, testified that she was getting ready to leave the

- 7 -

1 party, and while trying to get into the truck, she heard a commotion. (CRDoc. 91, at 143.)
2 Movant was not with her at the time. When she looked back to see people were yelling, she
3 lost her grip and fell backwards from the truck. (Id., at 143; CRDoc. 61, at 151.) After her
4 fall, Movant appeared next to her and helped her get back up. (Id.) Both witnesses Tracy
5 Thompson and Tiana Peters corroborate that there was arguing or fighting between Movant
6 and the victim, and that they heard the popping noises. (CRDoc. 91, at 147, 151.) Detective
7 Romo Lewis of the Gila River Indian Community testified that Movant admitted to him that
8 he had punched the victim in the face, which caused the victim to fall to the ground. (Id., at
9 159.)

Even if Movant were able to demonstrate that his counsel's failure to call Hazel Lewis as a witness at trial falls below an objective standard of reasonableness, Movant can not demonstrate prejudice. He can not demonstrate that a reasonable probability exists that, had Ms. Lewis testified, the result would have been different. Her statement regarding the events do not contradict the testimony of other witnesses on the seminal fact of Movant's presence near the victim at the time of the assault. Movant's fiancee at the time testified that Movant was not with her when she heard the commotion, but arrived right after. This is consistent with Ms. Lewis's account that when she came out of the house she observed Movant standing by Movant's fiancee at the time her daughter was yelling that Movant had just stabbed the victim. In addition, the admission by Movant that he had punched the victim in the face, and that the victim had fallen to the ground, is inconsistent with Ms. Lewis's account of a "verbal disagreement." Movant has failed to establish that his trial counsel was ineffective in not calling Hazel Lewis as a witness, or that he suffered any prejudice as a result.

Ground Three:

Movant claims that he received ineffective assistance of counsel because his trial counsel did not appeal the denial of his motion for mistrial on the basis of insufficient evidence, and because his appellate counsel did not raise the claim on appeal. (CVDoc. 1, at 6.) At the conclusion of Movant's trial, his counsel filed a motion for mistrial, for judgment of acquittal, and/or for new trial, arguing among other things, that the evidence was

insufficient to support his conviction on Count 2. (CRDoc. 89.) The district court denied the motion. (CRDoc. 105.) Movant's counsel raised on appeal to the Ninth Circuit Court of Appeals the district court's denial of his motion for mistrial, arguing that Movant's due process rights were violated because he was "either convicted based on insufficient evidence, or [] was convicted based on a fictitious assault with an imaginary weapon to which [Movant] was never placed on notice." (CRDoc. 6-1, at 32.) The appellate court denied relief, finding in part, that "there is sufficient evidence to sustain the guilty verdict on Count 2." (CRDoc. 151-1, at 2.) Movant has not established that his appellate counsel did not raise the issue of insufficiency of the evidence on appeal, and even if he had neglected to raise the issue, Movant has not demonstrated prejudice.

Ground Four:

      Movant claims that his counsel was ineffective by failing to raise as error during trial or on appeal the prosecutor's improper argument to the jury. (CVDoc. 1, at 7.) Movant argues that the prosecutor's statement during closing argument "that the defendant can be found guilty on count two for assault resulting in serious bodily injury, if the defendant engaged in a altercation w/the victim, and in the course of the fight the victim fell over and impaled himself by falling on a knife or whatever." (Id.) Movant's counsel did not object at the time the comment by the prosecutor was made, but in his closing statement, Movant's counsel argued that there was no evidence to support the prosecutor's hypothetical. (CRDoc. 93, at 31.) The prosecutor, in her rebuttal made it clear that she had not intended to introduce an alternative theory to the government's case, and that she had used the hypothetical to demonstrate the distinction between Counts 1 and 2 of the indictment, insofar as Count 1 required a finding that a knife was used, and Count 2 did not. (Id., at 40.) She then stressed that there was only one theory, which was that the victim suffered a serious bodily injury - a knife wound-that was delivered by Movant. (Id.)

      In trial counsel's motion for mistrial, for judgment of acquittal, and/or for a new trial, he argued, in part, that Movant's due process rights were violated because of the prosecutor's use of the hypothetical during closing argument. (CRDoc. 89.) The district court denied the

motion. (CRDoc. 105.) On appeal, Movant again raised the issue, arguing that the hypothetical was improper and prejudicial, and caused inconsistent verdicts. (CVDoc. 5, Exh. 1.) The Ninth Circuit Court of Appeals found no reversible error in the prosecutor's statement. (CRDoc. 151-1, at 3.) Although, because trial counsel did not object to the statement at the time it was made, the appellate court reviewed the issue for plain error, it found that "even if there is error, there is no evidence that it affected the outcome of the district court proceedings, because the verdict is not inconsistent and is supported by the evidence." (Id.) Movant has not established that his appellate counsel was ineffective in not raising the issue the prosecutor's improper argument at trial and on appeal, because the issue was raised, and in any event, Movant has not established prejudice.

**CONCLUSION**

Movant has not alleged specific facts, if true, that would entitle him to relief, and thus he has not earned the right to an evidentiary hearing. United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996). The motion and the files and records of Movant's case "conclusively show that [Movant] is entitled to no relief." 28 U.S.C. §2255. Movant's request for a hearing, and request to vacate, set aside or correct his sentence should be denied.

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because jurists of reason would not find it debatable whether the motion states a valid claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the court. See 28 U.S.C. § 636(b)(1);

Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed.R.Civ.P. 72.

DATED this 18th day of November, 2011.

_____
Michelle H. Burns
United States Magistrate Judge